UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIDNEY MAIDEN,<br><br>    Petitioner,<br><br>    v.<br><br>DUCART,<br><br>    Respondent. | Case No.: 1:14-cv-01946-JLT<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE FILE<br><br>ORDER DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |

In 2011, a jury convicted Petitioner of carjacking, assault with a firearm participation in a criminal street gang and other charges. As a result, the court sentenced him to 25 years-to-life in prison. In this action, he claims there was insufficient evidence to support his conviction, the prosecutor committed misconduct and that the California statute punishing participation in a criminal street gang is unconstitutionally vague. Because the Court finds none of the grounds for the petition may give rise to relief, the petition is **DENIED**.

I.    **PROCEDURAL HISTORY**

In 2011, Petitioner was convicted of carjacking, assault with a firearm, attempted carjacking, attempted first degree robbery, second degree robbery, possession of a firearm by a felon and active participation in a criminal street gang. (Doc. 20, Ex. A). True findings were also made regarding gang-related enhancements and allegations supporting he used a firearm. (Id.).

Petitioner appealed to the California Court of Appeals, Fifth Appellate District (the "5[th]

DCA"), which affirmed the conviction. (Doc. 20, Ex. A). Next, he filed a petition for review in the California Supreme Court, which was denied. (Lodged Document ("LD") 5).

## II. FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

Maiden's convictions arise from a series of events that occurred in Bakersfield on October 27, 2010. At approximately 8:30 p.m., Fernando Roman was carjacked at gunpoint in the parking lot of Valley Plaza Mall. The perpetrator forced Mr. Roman out of his green minivan, took his cell phone, and drove off in the vehicle.

Shortly before 10:00 p.m., two men approached Goben and Veronica Vargas while they were using a drive-through automated teller machine located on Oswell Street. One of the men wore a mask. The masked individual pointed a gun at Veronica Vargas and demanded she lower the passenger side window of the Vargas' automobile. The second man tried to gain entry from the opposite side of the car. Goben Vargas quickly shifted into drive and "hit the gas," allowing the couple to escape.

Within minutes of the encounter on Oswell Street, a similar incident occurred nearby on Auburn Street. Two men accosted Marilyn Aldana and Laura Sanchez in the parking lot of La Mina Restaurant and stole their purses at gunpoint. The men fled towards a green minivan occupied by a third individual. The person inside opened the door for the robbers and the car sped off after they jumped inside.

Fernando Roman's minivan was recovered by police around midnight. Officers searched the vehicle and found several items belonging to Marilyn Aldana and Laura Sanchez. The recovered items included credit cards, debit cards, and cosmetics.

Further investigation led police to the home of Maiden's cousin, Dayshnay Fountain. Two suspects, Stephan Cartwright and Michael Russell, were apprehended inside of Ms. Fountain's apartment. A search of the residence uncovered a semi-automatic handgun, a face mask, a digital camera and cell phone belonging to Laura Sanchez, and clothing matching the victims' descriptions of the robbers.

Ms. Fountain reportedly told police that Cartwright and Russell had been at her apartment earlier in the evening, but left at some point with Maiden. She said Maiden arrived in a vehicle she did not believe was his, and all three men departed in that vehicle. Police began searching for Maiden based on the information provided by Ms. Fountain.

At a field show-up conducted outside of Ms. Fountain's apartment, victims Marilyn Aldana and Laura Sanchez identified Cartwright and Russell as the men who had robbed them. Mr. and Mrs. Vargas could not positively identify the suspects but told police both men matched the general appearance of their attackers in terms of height, weight, and build. Goben Vargas also said that the gun, mask, and a brown sweatshirt seized from Ms. Fountain's apartment were all the same as those worn and used by the perpetrators.

Meanwhile, Fernando Roman identified Maiden from a photographic lineup. Maiden was located and taken into custody in the early morning hours of October 28, 2010. He was found in possession of Mr. Roman's cell phone at the time of his arrest.

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

2

On June 1, 2011, the Kern County District Attorney filed an amended criminal information charging Maiden with carjacking (Count 1), assault with a firearm (Counts 2, 6, 9 & 10), attempted carjacking (Count 3), attempted first degree robbery (Counts 4 & 5), second degree robbery (Counts 7 & 8), possession of a firearm by a felon (Count 11), and active participation in a criminal street gang (Count 12). The amended information contained enhancement allegations for gang association (Counts 1 through 11), personal use of a firearm (Counts 1, 2, 3, 4, 5, 7, 8 & 12) and firearm use liability as a principal in the commission of a felony offense (Counts 3, 4, 5, 7 & 8). Further enhancements were alleged pursuant to sections 667 and 667.5 but were subsequently dismissed at the request of the prosecutor.

The amended information charged Stephan Cartwright and Michael Russell with the same crimes alleged under Counts 3 through 12. Maiden was the only person accused of carjacking and assaulting Fernando Roman under Counts 1 and 2. The trial court later granted a motion to sever the trial of Russell from that of his co-defendants. Maiden and Cartwright were tried jointly in a two-week jury trial that began in August 2011.

All five victims testified as prosecution witnesses at Maiden's trial, as did several officers from the Bakersfield Police Department. Officer Matthew Gregory served as the prosecution's gang expert. Among other testimony, Officer Gregory provided background information regarding the criminal street gang known as the Bloods and opined that Maiden and Cartwright were active members of the gang.

Dayshnay Fountain was called as a prosecution witness, but she contradicted police testimony by denying Maiden had come to her home on the night in question. She also denied telling investigating officers that Cartwright and Russell were picked up by Maiden in a vehicle. According to Ms. Fountain, Cartwright left her apartment on foot at approximately 9:50 p.m. and Russell departed shortly after 10:00 p.m.

Maiden's sister, Shataree Scoggins, was called as a defense witness. She testified Maiden was at home with her and several family members on the evening of October 27, 2010 and had fallen asleep on a couch in the living room by 9:30 p.m. His sister also claimed that Russell, who is her cousin, gave her Fernando Roman's stolen cell phone earlier that day, "before it even became nighttime." Ms. Scoggins left the phone on a coffee table next to Maiden before she went to bed, thus explaining why it was found in his immediate vicinity at the time of Maiden's arrest.

Maiden was acquitted of attempted carjacking with respect to Goben and Veronica Vargas as alleged in Count 3. He was convicted on all remaining counts. The jury returned true findings on the gang enhancement allegations for all convictions under Counts 1 through 11 and for personal use of a firearm under Counts 1, 2, and 12. Firearm enhancement allegations based on his participation as a principal in the offenses charged under Counts 4, 5, 7 and 8 were also found to be true.

(Doc. 20, Exh. A, pp. 24-26).

### III.  DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.

7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B. Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court

4

"must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500. A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

**IV.     Petitioner's Claims**

Petitioner raises three grounds for relief. He claims: (1) there was insufficient evidence to support the convictions for first degree robbery, second degree robbery, and all three counts of assault with a firearm; (2) the prosecutor committed misconduct; and (3) Cal. Pen. Code § 186.22(a)—which criminalizes and punishes participation in a criminal street gang—is unconstitutionally void for vagueness.

   A. Sufficiency of the Evidence

Petitioner first contends that the convictions for first and second degree robbery and those for

assault with a firearm were not supported by sufficient evidence.

        1. <u>The 5th DCA's Opinion</u>

The 5th DCA rejected this claim as follows:

> Maiden does not dispute the sufficiency of evidence in support of his convictions relating to the carjacking of Fernando Roman, his unlawful possession of a firearm, or active participation in a criminal street gang. He contends the requisite proof was lacking as to the charges under Counts 4 through 10, i.e., the crimes committed against Marilyn Aldana, Laura Sanchez, and the Vargas family. More specifically, Maiden asserts "[t]here was no evidence that [he] was present during any of those crimes, or that he actively encouraged, aided or abetted in their commission." His position is untenable.
>
> There are no missing links in the chain of circumstantial evidence connecting Maiden to the crimes for which he was convicted. While some links may have been weaker than others, the evidence was sufficient to support multiple theories of liability, including his role as the driver who transported Cartwright and Russell to and from the locations where the offenses occurred. Maiden's arguments to the contrary ignore pertinent trial testimony and the applicable standard of review.
>
> "A substantial evidence inquiry examines the record in the light most favorable to the judgment and upholds it if the record contains reasonable, credible evidence of solid value upon which a reasonable trier of fact could have relied in reaching the conclusion in question." (<u>People v. Barnwell</u> (2007) 41 Cal.4th 1038, 1052, italics in original.) Reversal is not warranted unless the evidence is insufficient to support the verdict under any hypothesis. (<u>People v. Bolin</u> (1998) 18 Cal.4th 297, 331.) This standard applies in cases, such as this one, where the prosecution relies primarily on circumstantial evidence. (<u>People v. Zamudio</u> (2008) 43 Cal.4th 327, 357.)
>
> "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt." (<u>People v. Kraft</u> (2000) 23 Cal.4th 978, 1053–1054.) If the jury rejects the interpretation pointing to innocence, and there is competent evidence to support a finding of guilt as the more reasonable conclusion, we are bound by the jury's decision. (<u>People v. Towler</u> (1982) 31 Cal.3d 105, 118.) We cannot reweigh the evidence, reinterpret the evidence, or substitute our own judgment for that of the jury. (<u>People v. Baker</u> (2005) 126 Cal.App.4th 463, 469.)
>
> Maiden emphasizes the enhancement allegations for personal use of a firearm under Counts 4 through 10 were found to be untrue. He thus concludes "that the jury did not convict him as a perpetrator, but as an aider and abettor in those offenses." His reasoning on this point is sound, but it does not support any arguments for reversal.
>
> Aiding and abetting liability exists "when a person who does not directly commit a crime assists the direct perpetrator by aid or encouragement, with knowledge of the perpetrator's criminal intent and with the intent to help him carry out the offense." (<u>People v. Miranda</u> (2011) 192 Cal.App.4th 398, 407 (<u>Miranda</u>).) One who "promotes, encourages or instigates the commission of the crime" may be characterized as an aider and abettor. (<u>People v. Cooper</u> (1991) 53 Cal.3d 1158, 1164.) Likewise, any person who is "present for the purpose of diverting suspicion, or to serve as a lookout, or to give warning of anyone seeking to interfere, or to take charge of an automobile and to keep the engine running, or to drive the getaway car and to give direct aid to others in making their escape from the scene of the crime, is a principal in the crime committed." (<u>People v. Swanson–Birabent</u> (2003) 114 Cal.App.4th 733,

> 743–744, internal quotation marks omitted.)
>
> The decision to aid and abet may occur in the spur of the moment, and the assistance provided need not be a substantial factor in the offense. (People v. Nguyen (1993) 21 Cal.App.4th 518, 532.) "[A]ny person concerned in the commission of a crime, however slight that concern may be, is liable as a principal in the crime." (Ibid., citations omitted.) Companionship and conduct before and after the offense are relevant considerations in the liability analysis. (People v. Haynes (1998) 61 Cal.App.4th 1282, 1294.)
>
> Based on the facts and circumstances recounted above, there was substantial evidence linking Cartwright and Russell to the crimes at issue. Maiden had close ties to both individuals. As to Cartwright, the prosecution established a common membership in the Bloods street gang. There was also evidence of Russell's membership in the Bloods, as well as a familial relationship between him and Maiden.
>
> The prosecution's evidence indicated Cartwright and Russell were traveling in a vehicle with Maiden prior to committing the crimes alleged in Counts 4 through 10. The attempted robbery of Goben and Veronica Vargas, and the offenses involving Marilyn Aldana and Laura Sanchez, occurred in very close proximity of time and location. The robbers were seen fleeing in a green minivan occupied by a third individual. It was up to the jury to decide whether that third person was Maiden, or a nameless perpetrator who somehow managed to evade capture and suspicion.
>
> The jury reasonably could have inferred a scenario in which Maiden carjacked the minivan and then met up with his fellow gang members, encouraging them to commit additional crimes with him and/or with his assistance. Jurors apparently believed Maiden used the stolen vehicle to drive Cartwright and Russell to and from the locations where the subsequent offenses occurred. Assuming the role of a getaway driver, Maiden logically would have served as a lookout while his cohorts engaged in their crime spree. This hypothesis is supported by the testimony of Laura Sanchez, who said the man in the green minivan was waiting for Cartwright and Russell and helped facilitate their escape. The cumulative impact of the evidence was sufficient to allow the jury to conclude, without doubt, that Maiden aided and abetted the crimes charged under Counts 4 through 10.

(Doc. 20, Ex. A, pp. 26-28).

### 2. Federal Standard.

The law on sufficiency of the evidence is clearly established by the Supreme Court. Pursuant to the Court's holding in Jackson v. Virginia, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is as follows: "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

A federal court reviewing collaterally a state court conviction does not determine whether it is

satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.'" See id., *quoting* Jackson, 443 U.S. at 319. Only where no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). Except in the most exceptional of circumstances, Jackson does not permit a federal court to revisit credibility determinations. See id. at 957-958.

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). However, mere suspicion and speculation cannot support logical inferences. Id.; see, e.g., Juan H. v. Allen, 408 F.3d 1262, 1278-1279 (9th Cir. 2005)(only speculation supported conviction for first degree murder under theory of aiding and abetting).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference. Juan H., 408 F.3d at 1274. Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275. Moreover, in applying the AEDPA's deferential standard of review, this Court must also presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986). This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts. Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990). Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption. Sumner v. Mata, 455 U.S. 539, 597 (1981).

In <u>Cavazos, v. Sm</u>ith, __U.S. __, 132 S.Ct. 2 (2011), the Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that <u>Jackson</u>

> "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." <u>Renico v. Lett</u>, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted).
>
> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

<u>Cavazos</u>, 132 S.Ct. at 3.

> "<u>Jackson</u> says that evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' 443 U.S., at 319, 99 S.Ct. 2781. It also unambiguously instructs that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Id</u>., at 326, 99 S.Ct. 2781.

<u>Cavazos</u>, 132 S.Ct. at 6. [2]

### 3. Analysis

Petitioner argues that the evidence at trial "did not and nor would not logically permit any interpretation" that Petitioner was the carjacker, despite that fact that Roman identified Petitioner as such. (Doc. 26, p. 18). Petitioner characterizes the prosecution's evidence as "speculation and suspicion." (<u>Id</u>.). Petitioner points out various inconsistencies in the trial testimony, apparently to support his claim of insufficient evidence. (<u>Id</u>., p. 19). After claiming that Roman's identification of Petitioner was based on "subjective" rather than "objective" factors, he concludes that it was merely a case of mistaken identification. (<u>Id</u>.).

Petitioner's arguments are unpersuasive and reveal his misunderstanding of the liberal standard

---

[2] To the extent that the 5th DCA's opinion does not expressly cite the <u>Jackson v. Virginia</u> standard in analyzing the sufficiency claims herein, it must be noted that, long ago, the California Supreme Court expressly adopted the federal <u>Jackson</u> standard for sufficiency claims in state criminal proceedings. <u>People v. Johnson</u>, 26 Cal.3d 557, 576 (1980). Accordingly, the state court applied the correct legal standard, and this Court's only task is to determine whether the state court adjudication was contrary to or an unreasonable application of that standard.

of review to be applied here.  The Court's function is not to re-weigh the evidence.  Rather, the Court's only function is to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. The 5th DCA carefully set forth the evidence supporting the carjacking conviction and the Court will not repeat it again.  The Court agrees with the state court that, "[w]hile some links may have been weaker than others, the evidence was sufficient to support multiple theories of liability."  After reviewing all relevant evidence, the state court noted:

> The jury reasonably could have inferred a scenario in which Maiden carjacked the minivan and then met up with his fellow gang members, encouraging them to commit additional crimes with him and/or with his assistance.  Jurors apparently believed Maiden used the stolen vehicle to drive Cartwright and Russell to and from the locations where the subsequent offenses occurred.  Assuming the role of a getaway driver, Maiden logically would have served as a lookout while his cohorts engaged in their crime spree.  This hypothesis is supported by the testimony of Laura Sanchez, who said the man in the green minivan was waiting for Cartwright and Russell and helped facilitate their escape.  The cumulative impact of the evidence was sufficient to allow the jury to conclude, without doubt, that Maiden aided and abetted the crimes charged under Counts 4 through 10.

(Doc. 20, Ex. A, p. 28).

The Court agrees with the state court.  While some discrepancies and inconsistencies exist within the total body of evidence adduced at trial, the deferential standard under the AEDPA requires the Court to conclude that a rational trier of fact could have found the essential elements of the crimes in dispute here beyond a reasonable doubt.  Jackson, 443 U.S. at 319.

### B. Prosecutorial Misconduct

Petitioner next contends that the prosecutor engaged in misconduct by comments made during closing argument and rebuttal.

#### 1. The 5th DCA's Opinion.

The 5th DCA denied this claim as follows:

> Maiden argues for complete reversal of the judgment on grounds of prosecutorial misconduct.  The misconduct allegedly occurred during closing argument and rebuttal.  Maiden contends the prosecution argued facts not in evidence by stating that "Mr. Maiden's name came up" while police were at the home of Dayshnay Fountain.  Maiden further claims his constitutional rights were violated when the prosecution highlighted the fact that certain individuals did not testify in his defense at trial.
>
> The record disproves the first contention.  Officer Nicole Shirer testified regarding her conversations with Dashnay Fountain on October 28, 2010 and Ms. Fountain's reaction to the

discovery of a mask, a gun, and stolen property inside of her apartment: "She became very upset. She began to shake and to cry ... She said at about 7 o'clock in the evening, Sidney—a subject she told me was Sidney Maiden arrived at her residence. And shortly thereafter, Cartwright—Mr. Cartwright, Mr. Russell and Mr. Maiden all left together."

The prosecution did not resort to matters outside of the record by arguing Maiden's name "came up" and "somebody in that household mentioned him." Moreover, according to the testimony of Officer Shirer, the statements were accurate.

The remaining arguments ultimately pertain to the testimony of Maiden's sister, Shataree Scoggins. As previously discussed, Ms. Scoggins testified regarding Maiden's whereabouts on the evening of October 27, 2010. Maiden had allegedly fallen asleep by 9:30 p.m. inside a home occupied by several family members, including his mother. Ms. Scoggins also claimed to have told their mother, at the time of Maiden's arrest, that the cell phone belonging to Fernando Roman was given to her by Michael Russell. Her mother allegedly asked why she did not explain this to the police officers, to which Ms. Scoggins replied, "They didn't ask me."

The prosecution remarked upon the believability of Ms. Scoggins' story during closing argument and the fact that Maiden's mother did not testify in her son's defense. Advance notice was provided to the trial court and defense counsel that such comments would be made. When closing arguments were presented, the trial court reminded jurors the defense had no burden of proof and was thus under no obligation to produce witnesses. The prosecution acknowledged this as well, albeit in a less formal manner ("I have the burden folks....They don't have to prove a damn thing").

We find no legal error in the prosecutor's remarks. "[A] prosecutor may comment on the absence of logical witnesses to rebut the People's or corroborate the defendant's case." (People v. Stevens (2007) 41 Cal.4th 182, 210.) In light of his sister's testimony, Maiden's mother was a logical witness. "[I]t is neither unusual nor improper to comment on the failure to call logical witnesses." (People v. Gonzales (2012) 54 Cal.4th 1234, 1275.) This principle vitiates Maiden's claim of prosecutorial misconduct.

The case of People v. Gaines (1997) 54 Cal.App.4th 821 (Gaines), on which Maiden relies, is inapposite. In Gaines, the defendant took the stand and offered an alibi defense, identifying a particular witness in the courtroom who was expected to testify to facts corroborating his version of the events. (Gaines, supra, 54 Cal.App.4th at pp. 823–824.) The witness did not end up testifying. (Id. at p. 824.)

During rebuttal, the prosecutor speculated as to what the absent witness would have said had he testified, asserting the testimony would have contradicted that of the defendant. The prosecutor also accused defense counsel of essentially hiding the witness and obstructing the prosecution's ability to call him for impeachment purposes. (Gaines, supra, 54 Cal.App.4th at pp. 824–825.) The appellate court found these arguments went beyond the evidence in the record and rose to the level of prosecutorial misconduct. (Id. at pp. 825–826.)

The Gaines opinion holds "that a prosecutor commits misconduct when he purports to tell the jury why a defense witness did not testify and what the testimony of that witness would have been." (Gaines, supra, 54 Cal.App.4th at p. 822.) Such behavior did not occur in this case. The prosecution limited its comments to evidence in the record and permissibly noted Maiden's decision not to call logical witnesses.

(Doc. 20, Ex. A, pp. 28-29).

///

2. Federal Standard

Under clearly established federal law, a prosecutor's improper comments will be held to violate the Constitution only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Parker v. Matthews, ––– U.S. ––––, ––––, 132 S.Ct. 2148, 2153, 183 L.Ed.2d 32 (2012) (per curiam) (quoting Darden v. Wainright, 477 U.S. 168, 181–183 (1986)); see Sassounian v. Roe, 230 F.3d 1097, 1106 (9th Cir.2000). Prosecutorial misconduct deprives the defendant of a fair trial as guaranteed by the Due Process Clause if it prejudicially affects the substantial rights of a defendant. United States v. Yarbrough, 852 F.2d 1522, 1539 (9th Cir.1988) (citing Smith v. Phillips, 455 U.S. 209, 219 (1982)).

To grant habeas relief, this Court must conclude that the state court's rejection of the prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Parker v. Matthews, 132 S.Ct. at 2155 (quoting Harrington v. Richter, 131 S.Ct. at 767–87). The standard of Darden v. Wainwright is a very general one that provides courts with more leeway in reaching outcomes in case-by-case determinations. Parker, 132 S.Ct. at 2155 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

In determining whether the prosecutor's remarks rendered a trial fundamentally unfair, the remarks must be analyzed in the context of the entire proceeding. Boyde v. California, 494 U.S. 370, 385 (1990); Darden, 477 U.S. at 179-82. Furthermore, counsel are "given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom." Ceja v. Stewart, 97 F.3d 1246, 1253–1254 (9th Cir.1996) (quoting United States v. Baker, 10 F.3d 1374, 1415 (9th Cir.1993)). A reviewing court should consider challenged remarks in light of the realistic nature of closing arguments at trial. "Because 'improvisation frequently results in syntax left imperfect and meaning less than crystal clear,' 'a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations'." Williams v. Borg, 139 F.3d 737, 744 (9th Cir.) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 646–647 (1974)), cert. denied, 525 U.S. 937 (1998). Finally,

even when prosecutorial misconduct rises to the level of a due process violation, such misconduct provides grounds for habeas relief only if that misconduct is prejudicial under the harmless error test articulated in Brecht v. Abrahamson, 507 U.S. 619, 637–638 (1993); Shaw v. Terhune, 380 F.3d 473, 478 (9th Cir.2004). Thus, even where a prosecutor's argument, questions or behavior are found improper, relief is limited to cases in which a petitioner can establish that the misconduct resulted in actual, substantial prejudice.

          3.   Analysis.

Here, the 5th DCA considered the entire context of the trial, including comments by the prosecution in closing argument, before concluding that comments related to Dashnay Fountain were actually supported by the testimony of prosecution evidence, and that comments regarding the defense's failure to present witnesses to confirm Shataree Scoggin's testimony did not constitute misconduct.  The Court agrees.

As the 5th DCA noted, Officer Shirer testified that, on the night of Petitioner's arrest, Fountain told her about Petitioner's movements and actions with Cartwright and Russell.  Thus, the prosecutor's comments were support by admitted evidence, and the prosecution did not resort to matters outside of the record by arguing Maiden's name "came up" and "somebody in that household mentioned him."

Regarding the defense's failure to call a witness to verify Scoggins' testimony about Petitioner's whereabouts, contrary to Petitioner's contentions, it is permissible for the prosecutor to comment about the failure of the defense to call witnesses to support an aspect of the defense as long as the comment is not directed to the accused's right to avoid self-incrimination. United States v. Cabrera, 201 F.3d 1243, 1250 (9th Cir. 2000).  Such comments do not impermissible shift the burden of proof. Id.  As Respondent correctly notes, the prosecutor did not in any way suggest what testimony Petitioner's mother might give, only that his own mother would be a logical witness for the defense to call if indeed Ms. Scoggins' testimony was accurate and credible.  Under such circumstances, those comments did not violate Petitioner's constitutional rights. Moreover, the prosecutor reminded the jurors that Petitioner did not have "to prove a damn thing" and the court instructed the jury was instructed that comments of counsel were not evidence.  (LD 16, pp. 1307-1308).  Jurors are presumed to understand and follow the court's instructions.  Weeks v. Angelone, 528 U.S. 225, 234 (2000); see Waddington v.

Sarausad, 555 U.S. 179, 195 (2009)("arguments of counsel generally carry less weight with a jury than do instructions from the court."), *quoting* Boyde v. California, 494 U.S. 370, 384, 110 S.Ct. 1190 (1990).

None of the Darden factors favor Petitioner. The record does not establish that the prosecutor manipulated or misstated the evidence or that his comments implicated other specific rights of the accused. As discussed, the comments themselves were not objectionable content, and, in any event, the jurors were properly instructed at the conclusion of the trial regarding the comments of counsel.

Additionally, Petitioner's objections regarding the prosecutor's comments about Fountain's statements to police and the failure of the defense to call Petitioner's mother to confirm Scoggins' account do not amount to a due process violation because "[c]riticism of defense theories and tactics is a proper subject of closing argument." See United States v. Sayetsitty, 107 F.3d 1405, 1409 (9th Cir.1997) (citation omitted). Prosecutors have taken far more egregious shots at defense counsel and have been found not to have committed misconduct. See e.g., U.S. v. Del Toro–Barboza, 673 F.3d 1136, 1151 (9th Cir.2012) (characterizing defense strategy as "the Wizard of Oz trick"); United States v. Ruiz, 710 F.3d 1077, 1086 (9th Cir.2013) (characterizing defense case as "smoke and mirrors" directed to defense case and not counsel); Williams v. Borg, 139 F.3d 737, 744–45 (9th Cir.1998) (calling defendant's argument "trash" not misconduct; "He did not say the man was 'trash'; he said the argument was. A lawyer is entitled to characterize an argument with an epithet as well as a rebuttal."); United States v. Bernard, 299 F.3d 467, 487-88 (5th Cir.2002) (rejecting a challenge to a prosecutor's closing argument that accused the defense of trying "to get someone on this jury to...take a red herring"); but see, United States v. Sanchez, 659 F.3d 1252, 1224 (9th Cir.2011) (misconduct where the prosecutor argued: "the defense [counsel] in this case read the records and then told a story to match the records. And ladies and gentlemen, I'm going to ask you not to credit that scam that has been perpetrated on you here."). For these reasons, the Court will deny this claim.[3]

---

[3] In his Traverse, Petitioner makes much of the purported distinction between an "alibi" defense and a defense based upon "misidentification." Petitioner contends that the prosecution's emphasis upon an "alibi" defense and the lack of evidence supporting it was a "designed subterfuge" to "shift the burden of proof" to Petitioner. (Doc. 26, p. 6). In the Court's view, the distinction between an "alibi" defense and a defense of "misidentification" is, in this instance, artificial. Although under other circumstances it is conceivable that the two defenses would be distinct, in this case they are intertwined: Petitioner argues that Roman misidentified him and that he was not the individual involved in the robberies along with Cartwright and

C.  Unconstitutionality of Cal. Pen. Code § 186.22(a)

Finally, Petitioner contends that Cal. Pen. Code § 186.22(a) is unconstitutionally void for vagueness.

### 1. The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

> Section 186.22, subdivision (a), proscribes active participation in a criminal street gang. Maiden challenges the constitutionality of the statute, arguing it is void for vagueness because the term "gang" and the concept of active participation are ambiguous. In People v. Castenada (2000) 23 Cal.4th 743 (Castenada), the California Supreme Court considered the meaning of the phrase "actively participates in any criminal street gang," as used in section 186.22. The high court concluded that the statute is not unconstitutionally vague because "our Legislature has made it reasonably clear what conduct is prohibited" and because nothing in the statutory language would encourage "arbitrary or discriminatory law enforcement." (Castenada, supra, 23 Cal.4th at p. 752, citations omitted.)
>
> Maiden acknowledges that we are bound by the holding in Castenada but submits he is raising the issue to preserve federal appellate review. We would note for his benefit that the Eastern District of California has rejected challenges to section 186.22 made on grounds of unconstitutional vagueness. (See, e.g., Williams v. Evans (E.D. Cal. 2009) 2009 U.S. Dist. LEXIS 47310, *85–89, 2009 WL 1460832, *30–31.) In any event, Maiden's argument is devoid of merit under controlling decisions of the California Supreme Court.

(Doc. 20, Ex. A, p. 29).

### 2. Federal Standard.

The test for vagueness is whether the sentencing provision fails "to give a person of ordinary intelligence fair notice that it would apply to the conduct contemplated." United States v. Rearden, 349 F.3d 608, 614 (9th Cir.2003); see also Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971). To determine if a statute is vague, a court should look at the common understanding of the statute's terms. Broadrick v. Oklahoma, 413 U.S. 601, 608 (1973); United States v. Fitzgerald, 882 F.2d 397, 398 (9th Cir.1989). In addition, a statute must establish minimal guidelines for law enforcement and not grant law enforcement undue discretion. United States v. Sorenson, 914 F.2d 173, 174 (9th Cir.1990); United States v. Van Hawkins, 899 F.2d 852, 854 (9th Cir.1990). Unless First Amendment freedoms are implicated, "a vagueness challenge may not rest on arguments that the law is vague in its hypothetical

---

Russell. Assuming Petitioner is truthful, then he was obviously at some other location at the time of the crimes, thus raising the question of whether the defense had any proof of an alibi. If Petitioner cannot present any credible evidence of an alibi, then his claim that he is actually innocent becomes nothing more than self-serving speculation. Nothing about the relationship between these two defenses supports a conclusion that the prosecution was engaging in a "subterfuge" or that the prosecutor's comments "shifted" the burden of proof.

applications, but must show that the law is vague as applied to the facts of the case at hand." United States v. Johnson, 130 F.3d 1352, 1354 (9th Cir.1997) (citing Chapman v. United States, 500 U.S. 453, 467 (1991)).

### 3. Analysis.

The petition claims that sec. 186.22(a) is void for vagueness "since petitioner was deprived of adequate notice and the policy was impermissibly delegated…" (Doc. 1, p. 8). The Traverse does not address the issue at all. The Court presumes Petitioner means he was denied adequate notice of what constitutes "active participation" in a criminal street gang. However, the Court is not clear what he means when he claims that the "policy was impermissibly delegated." Thus, the Court will construe this argument as a claim that the statute's vagueness results in arbitrary enforcement.

The requirements for a gang enhancement are clear:

> First, the prosecutor must demonstrate that the defendant committed a felony "for the benefit of, at the direction of, or in association with [a] criminal street gang." Cal.Penal Code § 186.22(b)(1). Second, the prosecutor must show that the defendant committed the crime "with the specific intent to promote, further, or assist in any criminal conduct by gang members." Id. We have previously recognized the importance of keeping these two requirements separate, and have emphasized that the second step is not satisfied by evidence of mere membership in a criminal street gang alone. See Garcia v. Carey, 395 F.3d 1099, 1102–03 & n. 5 (9th Cir.2005).

Briceno v. Scribner, 555 F.3d 1069, 1078 (9th Cir. 2009). A "criminal street gang" is defined as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more" enumerated criminal acts, "having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." Cal.Penal Code § 186.22(f) (2002).

A "pattern of criminal gang activity" is defined as "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more" enumerated criminal offenses, "provided ... the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons." Cal.Penal Code § 186.22(e) (2002). "Primary activities" is defined as "one of the group's 'chief' or 'principal' occupations.... That definition would necessarily exclude the occasional commission of those crimes by the group's members." Sengpadychith, 26 Cal.4th 316, 323 (2001).

In Briceno, the court stated "that these 'detailed requirements' were designed to ensure that the statute increased punishment only when a defendant 'committed a felony to aid or abet criminal conduct of a group that has as a primary function the commission of specified criminal acts and whose members have actually committed specified crimes, and who acted with the specific intent to do so.'" Id. at 1080 (*quoting* People v. Gardeley, 14 Cal.4th 605, 623–24 & n. 10 (1997)). The Briceno court stated that the California Supreme Court in "Gardeley suggest[ed] that merely being a gang member, or committing a crime in association with another gang member, is not enough to trigger the sentencing enhancements of § 186.22(b). Rather, the defendant must commit the crime with the specific intent to aid or abet the criminal conduct of the gang." Id.

These requirements, as interpreted by the Ninth Circuit, are not vague, nor do they encourage arbitrary or discriminatory enforcement, but, instead, provide "minimal guidelines for law enforcement" but do "not grant law enforcement undue discretion." United States v. Sorenson, 914 F.2d 173, 174 (9th Cir. 1990). California Penal Code § 186.22 specifically lists the conduct that makes a group a criminal street gang. The statute provides sufficient information to determine (1) if Petitioner was a member of a gang, (2) if Petitioner's gang's primary activity was the commission of crimes, (3) if the gang's members engaged in a pattern of criminal activity, and (4) if Petitioner's offenses were committed "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." Cal.Penal Code § 186.22(b), (e), (f). Petitioner does not challenge the findings as to these gang enhancements and the Court finds no basis on which to conclude that the evidence supporting those enhancements was insufficient.

Moreover, numerous cases in this district have consistently held that this statute is not void for vagueness. E.g., Williams v. Evans, 2009 WL 1460832 (E.D.Cal.2009); Thae Lee v. Gipson, 2012 WL 5349506 (E.D. Cal. Oct. 26, 2012); Brookfield v. Yates, 2013 WL 6512844 (E.D. Cal. Dec. 12, 2013); Lobretto v. Sisto, 2013 WL 509160 (E.D. Cal. Feb. 12, 2013); Palos v. Sisto, 2007 WL 2695498 (E.D. Cal. Sept. 11, 2007); Martinez v. Tipton, 2009 WL 4809873 (E.D. Cal. Dec. 8, 2009). Nothing in the Court's analysis suggests any reason to depart from this long-standing position.

**V.     CONCLUSION**

For the foregoing reasons, the Court will **DENY** with prejudice the petition for writ of habeas corpus. Moreover, the Court declines to issue a certificate of appealability. A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denied a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (*quoting* Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.

**ORDER**

For the foregoing reasons, the Court HEREBY ORDERS as follows:

1. The petition for writ of habeas corpus (Doc. 1), is DENIED with prejudice;
2. The Clerk of the Court is DIRECTED to enter judgment and close the file;
3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **May 10, 2016**                             **/s/ Jennifer L. Thurston**
                                                                 UNITED STATES MAGISTRATE JUDGE